# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gallagher*, 2012 IL App (1st) 101772

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS GALLAGHER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1772 |
| Filed | June 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for residential burglary was reversed and the cause was remanded for a new trial where defendant's trial counsel was ineffective in failing to request an instruction on the lesser-included offense of criminal trespass to a residence after he argued the theory that defendant inadvertently entered the victim's hotel room in search of a restroom, especially when the failure to offer an instruction based on the argument could not be deemed a trial strategy under the circumstances. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-23465; the Hon. Evelyn B. Clay, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Patrick Morales-Doyle, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment an opinion.

## OPINION

¶ 1    Defendant, Thomas Gallagher, appeals his conviction after a jury trial of one count of residential burglary and his sentence of four years' imprisonment. On appeal, Gallagher contends (1) his trial counsel was ineffective for failing to tender jury instructions on the lesser-included offense of criminal trespass to a residence; (2) the State failed to prove beyond a reasonable doubt that he entered a hotel room with the intent to commit a theft; (3) the trial court violated Illinois Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)) by combining three legal principles into a single question, and failing to address the fourth principle; and (4) the State made improper comments during closing argument implying that Gallagher lied about being an artist, and vouching for the credibility of the State's witnesses. For the following reasons, we remand the cause for a new trial.

¶ 2                                JURISDICTION

¶ 3    The trial court sentenced Gallagher on May 19, 2010, and he filed a timely notice of appeal on June 7, 2010. Gallagher filed an amended notice of appeal on May 17, 2011. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                BACKGROUND

¶ 5    Gallagher was charged with one count of residential burglary for entering the hotel room of Kenneth Burkes. The following facts are relevant to the disposition of this case.

¶ 6    At trial, Kenneth Burkes testified that he was 29 years old and resided in Wisconsin. On November 22, 2008, he, his girlfriend Stephanie, and Stephanie's five-year-old daughter

came to Chicago to celebrate the Festival of Lights and visit the American Girl store. While in Chicago, they stayed at the Hilton located at 198 East Delaware. Gallagher stated that after walking through the door of their hotel room, there was "a small table with a sink in it and then the bathroom [was] there, then the bed [Gallagher slept in] [was] next to that *** [and] there's a night stand in between and another bed on the other side" in which Stephanie and her daughter slept. That night, Stephanie and her daughter were already asleep in their bed. Burkes had fallen asleep watching television when a text message to his cell phone woke him. He then went to the bathroom and prepared for bed. He testified that he liked "things to be square and neat" so he folded his pants and placed them over his bag. He took his "wallet out of [his] pocket, put that on the table [by the door] and it obviously had to be square with the table, and I had that in the upper left-hand corner of the table." He then turned off the lights and went to bed.

¶ 7        Burkes awoke again at some point because he either heard a noise or sensed something in the room, like he was "being watched." He observed a glare on the wall and after making sure Stephanie and her daughter were still sleeping in their bed, he "sat up and looked directly at the doorway." He then said, "Somebody [is] in our f-ing room." As he looked at the doorway, he "saw a man with a hat on, a black shirt with stripes, with I would say grayish stripes, and basically made contact, was able to completely identify the man standing in the doorway clear as day because the hallway was shining right on him, I mean he was working his way out and the door closed and that's what I saw." Burkes identified Gallagher as the man he saw in his room that night. He testified that he said "hello" to the man. When he first saw Gallagher, he was in the room "next to the table where [Burkes'] wallet was."

¶ 8        Burkes turned on the light and Stephanie asked him what he was doing. He told her that somebody was in their room and she replied that Burkes was probably dreaming. Burkes, however, got out of bed and opened the door. He heard the elevator ding and when he got to the elevator he looked in and saw two women and Gallagher, who was holding a bag and looking down at the floor. He wore the same clothing Burkes had seen him wear in the doorway of his room. At trial, Burkes identified a baseball cap and shirt as the items he saw Gallagher wear when he first observed him in the doorway.

¶ 9        After he failed to stop the elevator, Burkes went back to his room. He recalled that when he had first left the room to follow Gallagher to the elevator, he glanced at the table and noticed that his wallet was open "and some money fanned out." It was no longer in the corner of the table where he had placed it before going to bed. When Burkes came back to the room, Stephanie was counting the money in his wallet "because [they] were on a budget" and it appeared to be $40 short. When he told Stephanie that he wanted to investigate the matter further she thought he was crazy because the "guy could have a gun, he could have a knife." She wanted him to "leave it."

¶ 10       Burkes, however, went down to the lobby, where he saw the two women from the elevator at the front desk. They asked him what had happened and Burkes spoke with them. He then went to the twenty-second floor to see if he could find the man he saw in his room. When he did not see anyone, he went down to the lobby, where he spoke with Darlene Hampton, an employee of the Hilton. While he was with Hampton, the elevator door opened and a man wearing a blue shirt with glasses came out. He was carrying the same bag Burkes

had seen Gallagher holding earlier that night. The man proceeded to Café Med and Burkes identified the bag. Hampton followed the man into Café Med and grabbed him by the arm. Burkes told Hampton that it was the same man he saw in his room, except he wore different clothing. Burkes testified that he never gave Gallagher permission to be in his room that night.

¶ 11    On cross-examination, Burkes stated that he was "one hundred percent positive" he closed the door to the hotel room before going to bed. Although he did not latch the door, he stated that the door locked when it closed. He stated that he saw Gallagher in the doorway next to the table where he had placed his wallet. Burkes testified that he could see Gallagher's face because he was backing out of the room. He told hotel security that night someone may have taken $40 from his wallet, but he did not talk to security about it the next morning. Burkes also stated that he called the police because he was missing $40 after Gallagher left his room. He acknowledged that he was nervous when he spoke with the police.

¶ 12    On redirect, Burkes stated that he first told Hampton about missing $40 "a good strong hour" after he first suspected the theft. He knew that $40 was missing after Gallagher left the room because Stephanie had counted the money. On recross, Burkes stated that he did not talk to police a few hours after the incident, but spoke with them "[t]hroughout the night."

¶ 13    Darlene Hampton testified that she works for the Hilton as a security officer. On November 22, 2008, at approximately 11 p.m., she was working and having a conversation with four women. While talking to the women, she observed a man dressed in a blue T-shirt holding a green book bag come out of the elevator. The man looked at her and then ran inside the Café Med, a restaurant in the hotel. She followed the man into Café Med and observed him run to the side door, an exit door, and push the door as he tried to get out. The door was locked. Hampton identified Gallagher as the man she saw trying to exit Café Med. Hampton grabbed Gallagher and "he was jerking away. He said why are you grabbing me, I was not in anyone['s] room." Burkes then approached and spoke to them. Gallagher was placed in the security room and Hampton looked inside his backpack. She saw a black shirt, baseball cap, and a pair of sunglasses. Hampton testified that the Hilton lobby had men's and women's restrooms.

¶ 14    On cross-examination, Hampton stated that she wrote her report on the incident at around 12:30 a.m., 1½ hours after she interviewed Gallagher. She acknowledged that she did not put in her report that when she made eye contact with Gallagher in Café Med, he ran. On redirect, Hampton stated that her report was merely a summary of the events and not a "word for word account of every little thing that happened." Once the police were called, they took over the investigation.

¶ 15    Officer Adrian Corral testified that on November 22, 2008, he responded to a call at 198 East Delaware in Chicago. When he arrived, he met Hampton and proceeded to a room behind the front desk in which a person was seated. He identified Gallagher as the person in the room. After placing Gallagher into custody, Officer Corral searched the green backpack and recovered "a black baseball cap, sunglasses, U.S. currency, and approximately $4,400 in U.S. currency, *** some euros and pesos and *** a black shirt with white stripes."

Eventually the items were brought to the station, where Officer Musgraves inventoried them.

¶ 16      On cross-examination, Officer Corral testified that none of the items found in the green backpack was reported stolen, and no money was ever returned to Burkes. He stated that he filled out several reports on the incident and he never mentioned that $40 was taken from Burkes. If someone had told him that $40 had been taken from Burkes, he would have included it in his report.

¶ 17      After the State rested, and before the defense presented its case, the trial court held a jury instructions conference. Defense counsel offered Illinois Pattern Jury Instructions, Criminal, Nos. 16.11 and 16.11A (4th ed. 2000) (hereinafter, IPI Criminal 4th Nos. 16.11, 16.11A), instructions for the lesser-included offense of criminal trespass to real property. The trial court refused to give the instruction on the basis that the rules require that notice be given and no prior notice could be inferred from the record. The trial court did not revisit the jury instruction issue and subsequently instructed the jury only on the offense of residential burglary.

¶ 18      Gallagher testified in his own defense. He stated that he was 59 years old and was born and raised in Chicago. He moved to New Orleans when he was 27 years old and considers it his "home base." He testified that he's a professional artist whose work is displayed in The Neighborhood Gallery in New Orleans and also online. On November 22, 2008, Gallagher was in Chicago trying to market his art to galleries. Around 10:30 p.m., he was looking for something to do and went to the Hilton. He took the elevator upstairs to see if there was another bar on a mezzanine level. On the elevator he met a couple of women and they talked, but "there was no chemistry or anything like that." The women got off the elevator on the twentieth floor and Gallagher also got off on that floor. He walked them part of the way and then turned around toward the elevator. Gallagher testified that he "was in dire need of a bathroom" and he noticed that a door to a room was "ajar." He thought a "maid had cleaned the room and left the door ajar or somebody had checked out or whatever." He could see that no lights were on inside the room.

¶ 19      Gallagher pushed the door open further and stepped inside, intending to use the bathroom. He saw items like shopping bags "semi-scattered about" and he realized that "something [was] not right here." Gallagher stated that he never touched any of the items in the room. He knew he should leave and then he heard a voice speaking to him. Gallagher "turned around and left and went directly over to the bank of elevators." The elevator doors opened and he saw four women on the elevator. He stepped in and then a "big guy" walk up to the elevator. Gallagher identified Burkes as the man he saw at the elevator. The doors closed and the elevator went up a couple of floors where the women got off. Gallagher testified that he continued to go up three floors before getting off the elevator. He "had created a bad situation" and felt "humiliated and embarrassed."

¶ 20      As an artist, Gallagher carried a backpack with him because when he traveled he would often buy art supplies or art books. He acknowledged that after getting off the elevator, he took off his long-sleeved shirt and baseball cap, and placed the items in the backpack. He just wanted to get out of the hotel, because he knew he did not "belong [there]." He now wore only a blue T-shirt. Gallagher then took the elevator down to the lobby. He attempted to

leave through Café Med, which is where he had first entered the hotel. As he attempted to open the door to exit, Hampton came up to him and put her hand on his left shoulder. She told him to stop and he "complied with her one hundred percent." Hampton took him to a room by the security office and Gallagher answered all of her questions. The police came and Burkes was brought into the room on three occasions.

¶ 21    On cross-examination, Gallagher stated that the urge to use the bathroom did not come suddenly while he was on the twentieth floor, but he "had been holding it for a while." He did not use the lobby bathroom, however. When he entered Burkes' hotel room, he assumed it was empty and had he "known or even suspected that somebody was in that room" he would not have entered. He acknowledged that when he took off his shirt and baseball cap, he wanted to change his appearance. Gallagher stated that the money found in his backpack came from his earnings as an artist and from playing backgammon. The euros were won in backgammon and the pesos came from a trip to Mexico. Gallagher did not have a passport in his backpack, however, nor did it contain any painting materials. When Hampton questioned him in the security office, Gallagher told her that he never went into a hotel room. Gallagher stated that he was subsequently taken to the police station for processing. Until the time he went to the police station he never used the bathroom.

¶ 22    On redirect, Gallagher stated that he had sold some of his art on this trip to Chicago, but he did not keep track of the names of the buyers. He estimated that approximately $3,000 to $3,300 of the money found in his backpack came from selling his art and the rest he won in backgammon.

¶ 23    While the jury was deliberating, the foreperson sent a note to the trial judge stating, "We are deadlocked and cannot come to a decision . . . ." The trial court instructed the jury to continue deliberating. The jury requested a transcript of Burkes' testimony, but since it would not be available until the next morning the trial court sequestered the jury for the night. The next morning, the jury found Gallagher guilty of residential burglary. On May 19, 2010, the trial court denied Gallagher's motion for a new trial and sentenced him to four years' imprisonment, the minimum sentence available. Gallagher filed this timely appeal.

¶ 24                                          ANALYSIS

¶ 25    Gallagher contends that his trial counsel provided ineffective assistance because his strategy was to concede that Gallagher committed certain acts consistent with a lesser offense, but counsel failed to proffer the appropriate jury instruction for the lesser-included offense. To prevail on an ineffective assistance of counsel claim, Gallagher must show that (1) his counsel's performance was deficient so as to fall below an objective standard of reasonableness; and (2) the deficient performance prejudiced him so as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to satisfy either prong of this test defeats a claim of ineffective assistance. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To show deficient performance, Gallagher must "overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. [Citations.] Matters of trial strategy are generally immune from claims of ineffective assistance of counsel. [Citation.]" (Internal quotation marks omitted.) *People v Manning*, 241

Ill. 2d 319, 326-27 (2011). A reviewing court gives deference to trial counsel's "exercise of judgment, discretion or trial tactics even where [it] would have acted differently." *People v Ingram*, 382 Ill. App. 3d 997, 1006 (2008).

¶ 26    Gallagher argues that his trial counsel's strategy was to concede he committed actions consistent with trespass and present an instruction for the lesser-included offense to give the jury "a less severe option for conviction." Therefore, at the jury instructions conference, his counsel offered instructions for criminal trespass to real property which the trial court denied. Gallagher contends that his trial counsel should have offered instructions for criminal trespass to a residence. By offering the wrong instruction, he argues his counsel's performance was deficient by *Strickland* standards.

¶ 27    Defense counsel in his opening statement believed that the evidence that would be presented at trial could support a conviction for trespass. He stated:

> "Members of the jury, the evidence will show that this is not a residential burglary, that's the one charge you'll be evaluating. This is not a residential burglary. It might be a trespass but it's not a residential burglary and trespass is not before you."

After presentation of the State's case, at the jury instructions conference, defense counsel indicated that his strategy included giving jury instructions on the lesser included offense of trespass. However, counsel proffered IPI Criminal 4th Nos. 16.11 and 16.11A, instructions for criminal trespass to real property. Counsel thought the instruction was appropriate given Burkes' testimony at trial. He argued that "if you listen to Mr. Burkes' testimony *** he went through all of these details that *** he made sure that the door was locked and so that there was an implied notice that–no one else was to come into that room." The trial court denied the instruction, and then Gallagher presented his case.

¶ 28    Gallagher testified that he had stepped into Burkes' room and upon noticing that it was occupied, he felt "something was not right" and he "had created a bad situation." However, he maintained that he never had the intent to commit theft but merely wanted to use the bathroom. In closing argument, defense counsel referred to Gallagher's trial testimony that "[h]e opened the door, made a mistake, oops, I want to get out of this situation, I'm embarrassed." At the end of his argument, counsel stated that his client "was wrongfully accused, he was wrongfully charged," and he implored the jury "not to wrongfully convict him based on what we believe is an honest and innocent mistake. The evidence supports his testimony and we ask that you find him not guilty." The trial court never revisited the jury instruction issue and the jury was instructed only on the offense of residential burglary.

¶ 29    Gallagher argues that given his admission at trial that he inadvertently stepped into Burkes' room and knew he "had created a bad situation," his counsel should have requested that an instruction for the lesser-included offense of criminal trespass to a residence be given to the jury. Illinois Pattern Jury Instructions, Criminal, No. 14.17 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 14.17) defines criminal trespass to a residence as "when, without authority, [a person] knowingly enters any residence." "Residence" is defined as "the portion of a multi-unit residential building or complex which is the actual dwelling place of any person." We agree. The jury should have been given an instruction on a lesser-included offense that supported the defense evidence at trial. See *People v. Serrano*, 286 Ill. App. 3d

485, 492 (1997) (counsel's performance was deficient because he failed to offer an instruction on the theory of defense argued at trial). Furthermore, Gallagher was prejudiced by his counsel's performance. Counsel clearly contemplated a lesser-included offense instruction of trespass and should have realized after Gallagher testified that IPI Criminal 4th No. 14.17 was the proper instruction. Counsel "has a duty to conduct both factual and legal investigations on behalf of a client." *People v. Pollards*, 367 Ill. App. 3d 17, 23 (2006). Counsel could have requested another instructions conference and, given the evidence at trial, IPI Criminal 4th No. 14.17 would most likely have been given to the jury. Given Gallagher's testimony at trial, there is a reasonable probability that the jury would have convicted him on the lesser charge.

¶ 30　　The State disagrees, contending that trial counsel's decision of whether to offer a jury instruction on a lesser-included offense is one of trial strategy with no bearing on the competency of counsel. However, as in the case before us, "[w]here defense counsel argues a theory of defense but then fails to offer an instruction on that theory of defense, the failure cannot be called trial strategy and is evidence of ineffective assistance of counsel." *Serrano*, 286 Ill. App. 3d at 492. Therefore, we reverse and remand the cause for a new trial.

¶ 31　　Due to our disposition of this case, we need not address the remaining issues on appeal. However, we must now address the double jeopardy issue arising from our reversal of Gallagher's conviction. The double jeopardy clause of the United States Constitution prohibits the State from having another opportunity to try a case unless it has in the first trial presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt. *People v. Macon*, 396 Ill. App. 3d 451, 458 (2009). Since the State may reindict and retry defendant, double jeopardy requires the appellate court to rule upon the sufficiency of the evidence issue. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). Upon careful review of the record in the light most favorable to the prosecution, we find the evidence sufficiently supports the jury's verdict beyond a reasonable doubt. Our determination, however, is not binding on retrial and does not indicate this court's decision as to Gallagher's guilt or innocence.

¶ 32　　For the foregoing reasons, the judgment of the circuit court is reversed and the case is remanded for a new trial.

¶ 33　　Reversed and remanded.