# Illinois Official Reports

## Appellate Court

---

### *People v. Spencer*, 2014 IL App (1st) 130020

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KRYSTAL SPENCER, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0020 |
| Filed | October 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was charged with armed robbery with a firearm but was convicted of the uncharged offense of armed robbery with a dangerous weapon other than a firearm after the trial court erred in *sua sponte* considering the uncharged offense, defendant's conviction was vacated on the ground that her counsel was ineffective in failing to object to the improper finding of guilt on the uncharged offense, and the cause was remanded for resentencing on a simple charge of robbery, a lesser-included offense of the charged offense; furthermore, her conviction for aggravated unlawful restraint was vacated under the one-act, one-crime rule, since both offenses arose from the single act of robbing the victim and aggravated unlawful restraint was the lesser offense. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-10027; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Convictions vacated, new conviction of lesser-included offense of robbery entered, and case remanded for sentencing. |

Counsel on Appeal

Michael J. Pelletier and Deborah K. Pugh, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Sari London, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Krystal Spencer, fraudulently acquired cellular telephones from T-Mobile and then sold them. During a sale of phones to Jesus Ruiz, he was robbed. The State accused Spencer of setting up the sale with Ruiz and then working with three individuals to stage Ruiz's robbery. The defense claimed Spencer's roommate, who was with her at the time of the robbery, set up the robbery without her knowledge. After a bench trial, Spencer was convicted of armed robbery with a dangerous weapon other than a firearm and aggravated unlawful restraint based on accountability.

¶ 2    Spencer contends the trial court violated her right to due process by convicting her of the uncharged offense of armed robbery with "a dangerous weapon other than a firearm" (720 ILCS 5/18-2(a)(1) (West 2010)), because the offense was not a lesser-included offense of the charged offense of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)). We agree. The elements of the two offenses markedly differ. We vacate her conviction, enter judgment on the appropriate lesser-included offense of robbery, and remand for sentencing on that conviction.

¶ 3    Additionally, Spencer claims, and the State concedes, that her conviction for aggravated unlawful restraint must be vacated because it was based on the same physical act used to obtain her armed robbery conviction. We vacate Spencer's conviction and sentence for aggravated unlawful restraint, the lesser offense, as a violation of the one-act, one-crime rule.

¶ 4                                    BACKGROUND
¶ 5    The State charged Spencer by information with armed robbery while armed with a firearm and aggravated unlawful restraint. Under section 18-2(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2(a)(2) (West 2010)), the information alleged Spencer, based on an accountability theory, knowingly took property–cash, wallet, credit cards and cell phone–from Ruiz "by the use of force or by threatening the imminent use of force and she carried on or about her person or was otherwise armed with a firearm."

¶ 6        At trial, Jesus Ruiz testified he bought and sold electronics, including cellular telephones, as a side business. He often answered advertisements on Craigslist. Ruiz contacted the sellers by phone or text message, agreed on a price, and then would meet to complete the transaction. On April 4, 2011, Ruiz went to a parking lot on West Roosevelt to meet Spencer and purchase cell phones from her. Ruiz testified that earlier that day, Spencer text messaged him that she had phones she was willing to sell. The two agreed on a price and decided to meet. Ruiz arrived at the agreed location with his girlfriend, Veronica Delgado, at 12:30 p.m. He text messaged Spencer he was there. When Spencer arrived around 1:15 p.m., she approached Ruiz's car. He did not recall meeting Spencer before that day but testified he meets a lot of people in his business.

¶ 7        Ruiz testified Spencer held a bag with some boxes in it and that when he moved toward her to look at the phones, she said she had more in her car. She pointed to a blue Oldsmobile, which was parked about two lanes away. Spencer told Ruiz, "let's go to my car." He walked over with her. A female was in the driver's seat of the Oldsmobile. Ruiz entered the front passenger seat of the car and asked where the other phones were. When he sat down, he noticed the driver had a bat and a wooden stick with her. Ruiz left the car door open "just in case." Spencer came back from the trunk area and got in the backseat, behind the driver. Ruiz looked at Spencer to see what phones she had.

¶ 8        While looking at Spencer, Ruiz felt someone grab him from outside the passenger side of the car. The person grabbed Ruiz with one hand and pointed a gun at his chest. Ruiz testified he saw two black males. Ruiz testified the gun was pointed at his chest and he could feel it because it was heavy. Ruiz described the gun as "hard like metal." He testified he could see the chamber and the wooden handle. Ruiz described the gun as a seven-inch-long revolver. With the gun at Ruiz's chest, the men told him to give them "everything he had." They took his cash and his wallet with his credit cards. The woman in the driver's seat took his cell phone. The men yelled at him to get out of the car, which he did. Spencer remained in the backseat and said nothing as the men got into the car and drove away with Ruiz's belongings.

¶ 9        Ruiz returned to his car and called 911. Ruiz testified the entire incident lasted five minutes. He identified Spencer from a photographic array and in a lineup.

¶ 10       During cross-examination, Ruiz said he exchanged text messages with Spencer 15 to 20 times while they were setting up the April 4 sale. Ruiz then reviewed telephone records, which showed he received calls from Spencer's phone on Christmas Day in 2010. Ruiz could not recall the purpose of those calls. The phone records showed Ruiz and Spencer exchanged a total of 86 text messages between December 24, 2010, and April 4, 2011. Ruiz denied that he met Spencer 30 or 35 times to buy phones from her. He testified that he bought phones from 200 different people during the two-year period. He did not know if the cell phones Spencer sold him were stolen. She told him she obtained them from her account.

¶ 11       Veronica Delgado testified consistently with Ruiz's version of what happened. Delgado watched as Ruiz went with Spencer to the Oldsmobile. Delgado saw two black men walking quickly toward Spencer's car at the same time. Delgado testified she looked at Spencer, who was "kind of like shaking her head," like she was saying "no" and that is when the two men stopped approaching. Delgado then lost sight of Spencer and Ruiz. When Ruiz returned five minutes later, he was pale and nervous. When she asked him what was wrong, he said he had been robbed. Ruiz called 911. Delgado identified Spencer from a lineup.

¶ 12    The State rested and defense counsel moved for a directed finding, which the court granted, in part:

> "I'm going to grant it as it relates to the firearm. I don't believe at this time that I can find–no weapon was recovered–beyond a reasonable doubt that a firearm was in use during the course of this offense. So that aggravated factor which would enhance her sentence to a minimum of 21 years is now not present."

¶ 13    Spencer testified that before her arrest in this case, she was living with a friend, Summer Smith. She denied taking part in the robbery and explained that she had met Ruiz 30 to 40 times to sell him cell phones, normally meeting him at the BP gas station at State and Roosevelt.

¶ 14    According to Spencer, the cell phones she resold were obtained by misrepresenting herself to T-Mobile as a representative to get existing customers' account numbers. She would then order the phones from T-Mobile and charge them to the accounts she misrepresented she was calling on behalf of. She had the phones delivered to her address. Spencer testified she kept all of the information and account numbers in a notebook at her apartment to which Smith had access. Sometimes Smith would order phones so that the voice would be different in case the same T-Mobile employee answered. Spencer did not advertise she sold phones, but Ruiz found her. She testified he advertised that he was a buyer of 3G HTC phones and he set the prices he would pay for certain phones. Spencer first sold phones to Ruiz in June 2010 and made between $6,000 and $7,000 from him. She claimed she usually contacted him by text message. Spencer reviewed the phone records and testified that she called Ruiz on Christmas to sell him two phones, so she could have holiday money. She recalled that they met on Christmas for the transaction.

¶ 15    Spencer's text messages to Ruiz on April 4, 2011, between 8 and 11 a.m. were not from Spencer because she had left her cell phone in her roommate's room to charge. Spencer testified her roommate, Smith, knew how to contact Ruiz because Smith normally drove her to meet Ruiz. The morning of April 4, Smith asked Spencer if she wanted to go shopping. Spencer told Smith she wanted to go to a PetSmart in Aurora. Smith insisted they go to a certain FedEx store to get directions beforehand. When they arrived at the parking lot for the FedEx store, Spencer got out of the car and walked toward the store. She saw Ruiz, who asked if she had any phones. At trial, Spencer claimed she was surprised to see Ruiz. She testified she told him she would not have anything for him until the end of the week. He responded that he had received text messages from her and she had called to schedule a meeting with him in the parking lot. Spencer testified she told Ruiz she did not text him and she did not know what he was talking about. Spencer claimed she told Ruiz her roommate had her phone and she was "fitting to go concern her about it."

¶ 16    Spencer then walked back to Smith's car and Ruiz followed. She asked Smith if she had text messaged Ruiz and Smith replied that she had. Smith told Spencer she had cell phones in the trunk for Ruiz. Spencer went to the trunk while Ruiz sat in the front passenger seat. Spencer got a bag out of the trunk and then got into the car behind the driver. She testified that as she looked in the bag, two black males, whom she had never seen, approached and started taking Ruiz's belongings. She testified the two men pinned Ruiz and went through his pockets. Spencer claimed she just sat back, shocked by the whole incident. The men then pulled Ruiz out of the car, got in and Smith drove out of the parking lot. Spencer testified that she was not able to get out of the car until it stopped at a gas station. When it did, she got out, took a bus to

her apartment, packed her things and went to live with her grandmother. Spencer testified the last time she saw Smith was on April 5, 2011, when she went back to their apartment to get her phone.

¶ 17    During cross-examination, Spencer admitted that she and Smith did not pay rent for the apartment they shared. She also admitted she was unemployed. Spencer described it as just a coincidence that she saw Ruiz in the parking lot on April 4 and claimed she never walked up to his car. She also denied telling Ruiz to follow her to Smith's car. She explained that she did not say anything while the two men robbed Ruiz because she was scared and believed they were all being robbed. She did not see the men with a gun or weapon, and did not hear the men say anything. As they drove away, Smith asked the two men what they got from Ruiz. Spencer admitted she never contacted the police or Ruiz after the incident.

¶ 18    During closing, defense counsel argued Spencer was set up by her roommate. Counsel argued it did not make sense for Spencer to orchestrate the robbery of Ruiz when he was a "cash cow" for her cell phone sales. The State argued that under an accountability theory, Spencer was guilty of armed robbery because she set Ruiz up.

¶ 19    The trial court convicted Spencer of armed robbery. In doing so, the court said her testimony "really failed from a credibility standpoint profoundly so." The trial court called Spencer's version "preposterous." Commenting on the evidence, the trial court stated:

> "What I'm going to find today happened beyond a reasonable doubt. What I believe the State's evidence is that Mr. Ruiz met for this clandestine wholesale was that he was robbed by Ms. Spencer and a group of people with whom she was working. So there will be a finding of guilt as to the offense of armed robbery. I already indicated previously I'm not going to find that firearm enhancement. No weapon was recovered in this case. I couldn't find beyond a reasonable doubt that there was a weapon used. And I will also find her guilty of aggravated unlawful restraint."

¶ 20    Before sentencing, the State requested that the presentence investigation (PSI) be corrected because the charge listed the offense as "Armed Robbery with a Firearm," rather than "Armed Robbery with a Dangerous Weapon." The court responded, "Right. No gun was recovered in the case. Very fortunate for Ms. Spencer and as a result of [counsel's] excellent cross-examination of the witnesses did not find that a firearm had been used in this case beyond a reasonable doubt."

¶ 21    The court sentenced Spencer to eight years' imprisonment for armed robbery with a dangerous weapon other than a firearm and three years' for aggravated unlawful restraint, to run concurrently.

¶ 22                                              ANALYSIS
¶ 23            Conviction for Armed Robbery With Dangerous Weapon Other Than Firearm
¶ 24    Spencer argues her conviction for armed robbery with a dangerous weapon other than a firearm must be vacated because the offense was neither charged in the information nor a lesser-included offense of armed robbery with a firearm, which was charged. The State responds that Spencer has forfeited this claim by failing to object to the trial court's finding of guilt and failing to include the error in her posttrial motion. Spencer acknowledges she failed to preserve the issue for review, but requests that we review the issue under the plain error

doctrine or, alternatively, find that trial counsel provided ineffective assistance of counsel by failing to object to the court's finding of guilt on the uncharged offense.

¶ 25    The State contends we should not review this error as it is invited error. The State speculates trial counsel chose not to object to Spencer's conviction for armed robbery with a weapon other than a firearm because an objection would have led the court to overturn its acquittal of the charged offense–armed robbery with a firearm.

¶ 26    The doctrine of invited error does not apply. Under the doctrine, "an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). For the doctrine to apply, the defendant must affirmatively request or agree to proceed in a certain way. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (distinguishing between a defendant's failure to object and a defendant's active participation in direction of proceedings).

¶ 27    Defense counsel failed to object to the trial court's ruling, but counsel did not affirmatively request or accept the conviction for the uncharged offense. Counsel argued for a general acquittal, contending the State failed to prove Spencer guilty of any crime. Counsel never argued the court should convict Spencer of armed robbery with a dangerous weapon other than a firearm rather than the charged offense. Counsel's failure to object to the court's finding is forfeiture, not invited error.

¶ 28    When a defendant fails to object to an error at trial and include the error in a posttrial motion he or she forfeits ordinary appellate review of that error. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). Consequently, Spencer forfeited her challenge to this issue by failing to object and raise the claim in a posttrial motion.

¶ 29    Under Illinois's plain error doctrine, a reviewing court may consider a forfeited claim when " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Johnson*, 238 Ill. 2d at 484 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

¶ 30    The doctrine is intended to ensure a defendant receives a fair trial, but it does not guarantee a perfect trial. *Johnson*, 238 Ill. 2d at 484. The doctrine does not operate as a general savings clause but, instead, constitutes a narrow and limited exception to the typical forfeiture rule applicable to unpreserved claims. *Id.*

¶ 31    We typically undertake plain error analysis by first determining whether error occurred at all before proceeding to consider whether either prong of the doctrine has been satisfied. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010). The burden of persuasion rests with the defendant under both prongs of the plain error doctrine. *Id.* at 190.

¶ 32    In arguing there was no error, the State acknowledges Spencer was not charged with armed robbery with a dangerous weapon other than a firearm. The State claims, however, that under the charging instrument approach, armed robbery with a dangerous weapon other than a firearm is a lesser-included offense of armed robbery with a firearm and, therefore, Spencer's conviction is proper.

¶ 33    Due process prohibits a defendant from being convicted of an uncharged offense unless that offense is a lesser-included offense of a charged offense. *People v. Kolton*, 219 Ill. 2d 353, 360-61 (2006). The Code provides that a lesser-included offense is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9 (West 2010); see also *People v. Hamilton*, 179 Ill. 2d 319, 324 (1997). Whether an uncharged offense is a lesser-included offense of a charged offense is a question of law we review *de novo*. *Kolton*, 219 Ill. 2d at 361.

¶ 34    Seeking reversal, Spencer relies on *People v. Barnett*, 2011 IL App (3d) 090721, in which the Third District held that a charge of robbery while armed with a dangerous weapon other than a firearm (720 ILCS 5/18-2(a)(1) (West 2008)) was not a lesser-included offense of armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2008)). The *Barnett* court found the two offenses to be mutually exclusive. The court found the offenses contain different elements and, therefore, the offense of robbery while armed with a dangerous weapon other than a firearm cannot be a lesser-included offense of armed robbery with a firearm. *Barnett*, 2011 IL App (3d) 090721, ¶ 38. The court noted that had the State elected to charge the defendant with both offenses, the conviction for armed robbery would have been affirmed. *Barnett*, 2011 IL App (3d) 090721, ¶ 34.

¶ 35    The State responds that under the charging instruction approach set forth in *People v. Kolton*, 219 Ill. 2d 353 (2006), Spencer was properly convicted of a lesser-included offense of the charged offense.

¶ 36    In *Kolton*, our supreme court expanded the application of the charging instrument approach to allow any charge that can "reasonably be inferred" from the charging instrument to be considered a lesser-included offense of the charged offense. *Kolton*, 219 Ill. 2d at 367. The defendant was charged with predatory criminal sexual assault of a child and acquitted of the charged offense because the State failed to prove sexual penetration occurred. *Kolton*, 219 Ill. 2d 356. The defendant was then convicted of the uncharged offense of aggravated criminal sexual abuse, which, unlike the charged offense, does not require penetration but does require the act to be committed "for the purpose of sexual gratification or arousal." *Id.* at 369. The defendant argued aggravated criminal sexual abuse was not a lesser-included offense of predatory criminal sexual assault of a child because the charged offense contained no requirement that sexual penetration be committed for the purpose of sexual gratification. *Id.* at 369-70. The supreme court disagreed with the defendant's reading of the two charges and found that the requirement of sexual gratification was implicit in "sexual penetration." *Id.* at 369-71. The court found it "appropriate to allow for such an inference to be drawn in instances such as this because the element–that a defendant acted 'for the purpose of sexual gratification'–is something that is typically inferred from the circumstances used to prove the alleged act." *Id.* at 370-71.

¶ 37    The State claims that just as sexual gratification is implicit in sexual penetration, armed robbery with a dangerous weapon is implicit in the charge of armed robbery with a firearm.

¶ 38    Defendant argues the State's position is "nonsensical" because the charge of armed robbery with some weapon other than a firearm "*specifically excludes*" the charged offense of armed robbery with a firearm. (Emphasis in original.) Recognizing the supreme court in *Kolton* found that sexual penetration nearly always involves an intent to receive sexual

gratification, defendant argues, in contrast, "an item that is not a firearm is *never* an item that is a firearm." (Emphasis in original.)

¶ 39    The plain language of the armed robbery statute and the charging instrument demonstrates that armed robbery with a dangerous weapon other than a firearm is a separate and distinct offense from armed robbery with a firearm–not a lesser-included offense. See *Barnett*, 2011 IL App (3d) 090721, ¶ 37.

¶ 40    Using the approach outlined in *Kolton*, we agree with Spencer that is it not reasonable to infer that when the State charged her with possessing a firearm, she should have anticipated that the State could prove the opposite–that the item was a dangerous weapon other than a firearm. A firearm cannot simultaneously be a firearm and something other than a firearm in the same way that a square cannot simultaneously be a circle and something other than a circle. It is logically impossible.

¶ 41    The State also relies on *People v. Washington*, 2012 IL 107993, for its contention that armed robbery with a dangerous weapon other than a firearm is a lesser-included offense of armed robbery with a firearm. The State's reliance, however, is misplaced. *Washington* relies on an earlier version of the armed robbery statute, before the legislature divided armed robbery with a dangerous weapon other than a firearm and armed robbery with a firearm into two different crimes. *Washington*, 2012 IL 107993, ¶¶ 5-9 (defendant was charged under pre-2000 version of armed robbery statute which required State prove only that defendant carried a "dangerous weapon"); see also *People v. McBride*, 2012 IL App (1st) 100375, ¶¶ 25-26 (decisions interpreting pre-2000 version of statute offer no guidance as to post-2000 version).

¶ 42    We analyzed the current statute in *Barnett* and held that armed robbery with a dangerous weapon other than a firearm is not a lesser-included offense of armed robbery with a firearm. *Barnett*, 2011 IL App (3d) 090721, ¶ 38. A conviction under section 18-2(a)(1) requires proof that the weapon was dangerous. This is not a factor under section 18-2(a)(2), which requires only that the State prove the weapon was a firearm. *Id.* ¶¶ 37-38. The *Barnett* court reasoned that if a defendant is charged with armed robbery with a dangerous weapon other than a firearm under section 18-2(a)(1), the weapon cannot be a firearm because the clear language of the statute directs that those sections are mutually exclusive of each other. *Id.*

¶ 43    The State's argument that Spencer was adequately apprised of the charge against her when she was charged with armed robbery with a firearm under section 18-2(a)(2) of the statute, but convicted of armed robbery with a dangerous weapon other than a firearm under section 18-2(a)(1), is unpersuasive. The information charging Spencer referred only to armed robbery with a firearm. A dangerous weapon other than a firearm cannot be reasonably inferred from the information. Hence, the trial court improperly considered *sua sponte* whether Spencer committed armed robbery with a dangerous weapon other than a firearm.

¶ 44    Having found error, we must determine whether Spencer satisfied either prong for the plain error doctrine, such that the error may be considered. Spencer does not argue plain error under the first prong–that the evidence is so closely balanced that the guilty verdict may have resulted from the error–rather, she contends the court's error affected the fairness of her trial and challenged the integrity of the judicial process–the second prong.

¶ 45    The State argues Spencer has not satisfied the second prong of the plain error doctrine because the claimed error was not structural. We agree.

¶ 46    An error is reversible under the second prong of the plain error doctrine only when the error is "structural, *i.e.*, a systemic error which serves to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). Structural errors are rare and have only been recognized in cases involving "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id*. at 609. Accordingly, even though the trial court erred by considering *sua sponte* whether Spencer committed armed robbery with a dangerous weapon other than a firearm, the error is not reversible under the second prong of the plain-error doctrine.

¶ 47                                    Ineffective Counsel

¶ 48    Spencer's conviction, however, must be vacated. Not because the court's error affected the integrity of the trial process, but because trial counsel was ineffective for failing to object to the trial court's improper finding of guilt on the uncharged offense.

¶ 49    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Under *Strickland*, a defendant must show that counsel's performance was deficient and that he or she was prejudiced because of it. *Strickland*, 466 U.S. at 687. To show deficient representation, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 162-63 (2001). To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's deficient representation, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see *People v. Spann*, 332 Ill. App. 3d 425, 437 (2002) (motion to quash arrest and suppress evidence would have had a reasonable probability of success and, therefore, counsel's failure to present one was ineffective); see also *People v. Gallagher*, 2012 IL App (1st) 101772, ¶ 29 (trial counsel found ineffective for failing to request an instruction on a lesser-included offense where evidence supported it).

¶ 50    The State could have charged Spencer with both types of robbery. If the State had done so, a conviction for armed robbery with a dangerous weapon other than a firearm could–if proven–have been proper. In light of the State's failure to charge Spencer with committing a robbery with a dangerous weapon other than a firearm, however, the court's only option was to find Spencer guilty of robbery. Trial counsel's failure to object when the trial court improperly found Spencer guilty of an uncharged offense that was not a lesser-included offense of the charged offense was not reasonable. Had counsel objected to the trial court's improper finding, the result of the proceeding would not have been Spencer being found guilty but, rather, a conviction of the actual lesser-included offense, *i.e.*, robbery. Hence, Spencer received ineffective assistance of counsel and, as such, the error requires that her conviction for armed robbery with a dangerous weapon other than a firearm be vacated and that the matter be remanded for resentencing.

¶ 51    Accordingly, we vacate Spencer's conviction for armed robbery, reduce it to robbery (720 ILCS 5/18-1(a) (West 2010)), a lesser-included offense of the charged offense, and remand the cause for a new sentencing hearing.

¶ 52                                              One Act, One Crime

¶ 53       Spencer contends, and the State concedes, that her conviction for aggravated unlawful restraint should be vacated under the one-act, one-crime rule because both her convictions were carved from the same physical act–the robbery of Ruiz. We agree with the parties.

¶ 54       Under the one-act, one-crime rule, a defendant may not be convicted of multiple offenses based on the same physical act. If a defendant is so convicted, the conviction for the less serious offense must be vacated. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Accordingly, we vacate Spencer's conviction and sentence for aggravated unlawful restraint. Ill. S. Ct. R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995).

¶ 55                                                 CONCLUSION

¶ 56       We exercise our authority under Illinois Supreme Court Rule 615(b)(3) and reduce Spencer's conviction to the lesser-included offense of robbery (720 ILCS 5/18-1(a) (West 2010)) and remand the matter to the trial court for sentencing.

¶ 57       Under the one-act, one-crime rule, we vacate Spencer's conviction and sentence for aggravated unlawful restraint.

¶ 58       Convictions vacated, new conviction of lesser-included offense of robbery entered, and case remanded for sentencing.