NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180233-U

NO. 4-18-0233

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| VINCENT E. CLARK, | ) | No. 16CF1199 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant forfeited the sentencing issues raised on appeal by failing to raise them with the trial court and his forfeiture is not excused under the plain-error doctrine.

¶ 2    Following a jury trial, defendant, Vincent E. Clark, was found guilty of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2014)), unlawful possession of a controlled substance with the intent to deliver (*id.* § 401(d)(i)), and unlawful possession of a controlled substance (*id.* § 402(c)). The trial court sentenced him to two concurrent terms of 12 years in the Illinois Department of Corrections (DOC). On appeal, defendant argues the court abused its discretion in sentencing him to 12 years in DOC because the sentence was not proportionate to the nature of the offenses and did not reflect his rehabilitative potential. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On October 24, 2016, the State charged defendant with four counts of unlawful delivery of a controlled substance within 1000 feet of a church (*id*. § 407(b)(1), (b)(2)) (Counts I, III, V, and VII); four counts of unlawful delivery of a controlled substance (*id*. § 401(c)(2), (d)(i)) (Counts II, IV, VI, and VIII); one count of unlawful possession of a controlled substance with the intent to deliver (*id*. § 401(d)(i)) (Count IX); and one count of unlawful possession of a controlled substance (*id*. § 402(c)) (Count X). Counts I, II, III, and IV related to an alleged sale of cocaine on October 7, 2016, while Counts V, VI, VII, VIII, IX, and X related to an alleged sale of cocaine on October 21, 2016.

¶ 5        The cause proceeded to a jury trial on November 13, 2017. During a pretrial conference, the State announced its intention to proceed only on Counts II, VI, IX, and X.

¶ 6        At trial, the State called Detective Stephen Brown of the Bloomington Police Department. Detective Brown described two "controlled buy transactions" involving defendant, one conducted on October 7, 2016, and the other one conducted on October 21, 2016. Both transactions involved Darrell Cole Brown (Cole), a "confidential source" with whom Detective Brown had worked previously. According to Detective Brown, Cole contacted him on October 4, 2016, with the name of a person who "was bringing crack cocaine into McLean County." Detective Brown scheduled a "buy walk" for October 7, 2016. According to Detective Brown, a "buy walk" occurs when "the informant will buy the drugs and we'll let the person that brings them leave." A meeting between Cole and defendant was arranged at Buffalo Wild Wings in Bloomington and Detective Brown provided Cole with $200 to purchase cocaine from defendant. Detective Brown followed Cole to Buffalo Wild Wings in a separate car. A short time after the two arrived, Detective Brown observed Cole approach a green Buick, later determined to be defendant's car,

and after a few seconds, walk away from the car. After defendant left the parking lot, Detective Brown met with Cole and Cole provided Detective Brown with "a bagg[ie] of crack cocaine" he had obtained from defendant.

¶ 7 Detective Brown next testified that, on October 21, 2016, he organized a "buy bust," which he described as an operation where "the person shows up and does the transactions, [and] we'll arrest whoever does that." Detective Brown provided Cole another $200 and then drove to a location across the street from the Buffalo Wild Wings parking lot where Cole and defendant were to meet again. According to Detective Brown, after Cole went to the Buffalo Wild Wings, he returned to Detective Brown and provided him with another "baggie of crack cocaine" he had purchased from defendant. Defendant was arrested a short time later.

¶ 8 That evening, Detective Brown conducted a recorded interview with defendant. During the interview, which was published to the jury, defendant stated that he sold cocaine to between four and five people in "Bloomington and Anchor and Fifteen Hundred" and that these sales occurred "[e]very two or three days."

¶ 9 After the completion of the State's case, defendant called his cousin, Dabreyon Williams. Williams testified that he rode with defendant from Danville to Bloomington on October 21, 2016, and was with defendant when he was arrested. According to Williams, from the moment he got into defendant's car, defendant's "phone just kept constantly ringing." Williams further testified that defendant ignored most of the calls but, when he did answer the phone, defendant would request the caller to stop calling.

¶ 10 Defendant testified on his own behalf. According to defendant, the first time he met Cole was on October 21, 2016. Defendant testified that, on that date, Cole called the cellphone

defendant was carrying approximately 60 times. According to defendant, after about 40 phone calls from Cole, defendant agreed to sell him cocaine because Cole had "bribed" defendant by telling him his "girlfriend needed it, that she gets sick without it." Defendant stated he then drove to the Buffalo Wild Wings in Bloomington and sold Cole cocaine.

¶ 11　　　　At the conclusion of the trial, the jury found defendant guilty on Counts VI, IX, and X. A presentence investigation (PSI) report was ordered and the matter was set for sentencing.

¶ 12　　　　The sentencing hearing was held on January 19, 2018. The trial court began the proceedings by noting it had reviewed the PSI report and defendant's written statement contained in the report. Neither party presented additional evidence during the sentencing hearing. The State recommended a prison sentence of 18 years, noting defendant had confessed to regularly selling drugs to individuals in McLean County and had multiple prior felony convictions. During defense counsel's argument, he acknowledged that, because defendant had previously been convicted of multiple Class 2 felonies, defendant was eligible for a prison sentence between 6 and 30 years. Defense counsel then requested the court impose a sentence of six years in prison, noting defendant had received his first felony conviction when he was 17 years old, the "amount of the drugs that were sold [was] small," and, until September of 2016, defendant had a stable employment record. Speaking in allocution, defendant stated he only told Detective Brown that he sold drugs to individuals in McLean County "so that way they would put the blame on me and they would let [Williams] get *** out of [t]here." Defendant also stated that, due to his pretrial incarceration, he had already been away from his family and children for over a year.

¶ 13　　　　Following defendant's statement in allocution, the trial court noted it had "considered the information in the [PSI] report including the written statement of the defendant,

the recommendations of counsel, the defendant's oral statement \*\*\*, as well as all of the relevant statutory factors in aggravation and mitigation, and the evidence presented at trial." The court then noted that, by claiming he had lied to Detective Brown to protect Williams, defendant had "not accepted responsibility for [his] actions." The court observed that defendant was being sentenced for his fifth and sixth felony convictions at "a very young age," which indicated to the court that defendant was "one who simply doesn't respect the law, one who can't confine [his] conduct to the law, and someone who is very likely to commit further crimes unless [he] is incarcerated for a significant period of time." The court found that Count X merged into Count IX and then sentenced defendant on Counts VI and IX to two concurrent terms of 12 years in DOC followed by three years' mandatory supervised release.

¶ 14      On January 24, 2018, defendant filed a motion to reconsider sentence alleging "[t]he weight of the drug transaction was not considered at all by the [c]ourt." A hearing on defendant's motion was held on March 29, 2018. During the hearing, the following colloquy occurred:

> "MR. MORRIS [(DEFENSE ATTORNEY)]: Very basically, I'm not going to belabor it, just a couple points here that—the [c]ourt, I know, in the petition to sentence my client, considered my client a drug dealer, and that's one explanation the [c]ourt gave the defendant as to why he posed [*sic*] a sentence of 12 years in [DOC]. But we just felt the small amount that he was convicted of, that—that indicated that wasn't considered by the [c]ourt as to the amount that he did express on occasion that he delivered the drug in question. So for that reason, we felt the [c]ourt should give a lower sentence than 12 years imposed. Thank you.

THE COURT: Thank you Mr. Morris. Mr. Horve [(assistant state's attorney)]?

MR. HORVE: Your Honor, the defendant had multiple felony convictions, and the [c]ourt had a wide range of sentencing from 6 to 30 years in [DOC]. And I didn't put it into perspective, but from the People's perspective, that's certainly less than half of what he was eligible for with that prior record. And a 12-year term is certainly fair, and from our perspective cannot and would not be considered an abuse of discretion in the [c]ourt's sentencing parameters. And we think the sentence imposed is certainly fair and ask the motion be denied. Thank you, Your Honor.

THE COURT: Thank you. Any further response, Mr. Morris?

MR. MORRIS: My only comment is, at no time do we believe the [c]ourt has abused its discretion. The [c]ourt had a range by law, and that was 6 to 30. So we think the [c]ourt maybe didn't consider that one aspect that we argued for a little bit lower sentence than what the [c]ourt imposed."

After the arguments, the trial court noted the "primary motivation" behind its sentence had been defendant's prior criminal record but that by sentencing defendant to the "lower half" of the range for which he was eligible, the court felt it had "take[n] consideration of the amount [of cocaine] and the defendant's level of involvement here in imposing this sentence." The court ultimately denied defendant's motion for a reduced sentence.

¶ 15        This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17        On appeal, defendant argues the trial court abused its discretion in sentencing him to 12 years in DOC because the sentence was not proportionate to the nature of the offenses and

did not reflect his rehabilitative potential. The State contends defendant's claim is barred under the invited error doctrine. In the alternative, the State argues defendant forfeited his claim by failing to raise it in his postsentencing motion.

¶ 18    Initially, the State contends defendant's claim is barred under the invited error doctrine. "The rule of invited error or acquiescence is a form of procedural default also described as estoppel." *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 33, 969 N.E.2d 359. "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319, 802 N.E.2d 1185, 1190 (2003). "For the doctrine to apply, the defendant must affirmatively request or agree to proceed in a certain way." *People v. Spencer*, 2014 IL App (1st) 130020, ¶ 26, 20 N.E.3d 785. According to the State, defendant is estopped from challenging his sentence because, during the hearing on defendant's motion to reconsider sentence, defense counsel stated that, "at no time do we believe the [c]ourt has abused its discretion." Considered in context, however, it is clear that defense counsel's remark was meant to express that the trial court was authorized to impose a sentence of twelve years, not that defendant agreed the sentence was appropriate.

¶ 19    During defense counsel's argument on the postsentencing motion, he contended that, in sentencing defendant, the trial court failed to consider that defendant had possessed and distributed only a "small amount" of cocaine. In response, the State argued that the court did not abuse its discretion because the sentence imposed was within the statutory sentencing range of 6 to 30 years. Only in response to the State's argument did defense counsel assert that the court had not abused its discretion. Defense counsel subsequently repeated that defendant's position was that

the court had failed to consider the small quantity of cocaine at issue. Considering defense counsel's statement in context, it is apparent that defense counsel meant to convey that defendant agreed the court was permitted to sentence him to DOC for 12 years. Defense counsel's statement cannot be interpreted as an agreement by defendant that his sentence was appropriate such that he is estopped from arguing on appeal that it was excessive.

¶ 20        The State next contends defendant forfeited review of his excessive-sentence claim because, in his motion to reduce sentence, defendant's only allegation of error was that the trial court had failed to consider the relatively small amount of cocaine defendant had sold to Cole. Defendant concedes his current claim was not properly preserved because it was not included in his postsentencing motion. See *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172 ("In order to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). However, defendant asserts this court may review his claim under the plain-error doctrine.

¶ 21        Forfeited claims may be reviewed under the plain-error doctrine in the following two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id*.

"The initial step under either prong of the plain-error doctrine is to determine whether the claim

presented on review actually amounts to a clear or obvious error at all." (Internal quotation marks omitted.) *Id*. Thus, we must first determine whether the trial court committed a clear or obvious error in sentencing defendant to two concurrent terms of 12 years in DOC.

¶ 22 "The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810 (citing Ill. Const. 1970, art. I, § 11). "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.* The trial court has "great discretion *** in each case to fashion an appropriate sentence within the statutory limits." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 210 (1999). "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494.

¶ 23 Here, defendant was convicted of two Class X felony offenses. A Class X felony is punishable by a prison sentence of not less than 6 years and not more than 30 years. 730 ILCS 5/5-4.5-25(a) (West 2014). As a result, defendant's 12-year prison sentence fell well within the statutory range. "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *McGuire*, 2017 IL App (4th) 150695, ¶ 38.

¶ 24 According to defendant, the sentence imposed by the trial court is disproportionate to the nature of the offenses and the court failed to consider his potential for rehabilitation. Specifically, defendant argues his conduct "neither caused nor threatened serious physical harm to

another," (see 730 ILCS 5/5-5-3.1(a)(1) (West 2014)), and was "motivated by personal financial, health, and employment setbacks." Additionally, according to defendant, he was "badgered into selling drugs" by Cole. Defendant also points to his "strong recent record of lawful employment," his "strong family support and a good relationship with his parents and siblings," and his relationship with and responsibility to his children (see *id*. § 5-5-3.1(a)(11)).

¶ 25        "A court is not required to expressly outline every factor it considers for sentencing and we presume the court considered all mitigating factors on the record in the absence of explicit evidence to the contrary." *People v. Harris*, 2015 IL App (4th) 140696, ¶ 57, 32 N.E.3d 211. Defendant points to no explicit evidence showing that the trial court failed to consider any of the mitigating evidence presented during the trial or the sentencing hearing. Indeed, our review of the record indicates that, before the court sentenced defendant, it reviewed all the mitigating and rehabilitative factors defendant claims were not taken into account. During the sentencing hearing, the trial court stated it had "considered the information in the [PSI] report including the written statement of the defendant *** as well as all of the relevant statutory factors in aggravation and mitigation, and the evidence presented at trial." The PSI report contained a summary of defendant's employment history, family history, health history, and economic status. In his written statement that was included in the PSI report, defendant referenced the multiple phone calls he received from Cole prior to the sale and briefly summarized his financial issues, his health issues, his relationship to his family, and his employment history. During trial, defendant had referenced the multiple phone calls he received from Cole on October 21, 2016, and how he felt compelled to sell cocaine to Cole based on those calls. Additionally, because the court stated it had reviewed the statutory factors in mitigation, it necessarily would have considered that defendant did not cause or threaten

- 10 -

serious physical harm to anyone as well as the effect defendant's absence would have on his children. See 730 ILCS 5/5-5-3.1(a)(1), (a)(11) (West 2014).

¶ 26     In summary, defendant was eligible for a prison term of between 6 and 30 years for unlawful delivery of a controlled substance and unlawful possession of a controlled substance with the intent to deliver. After considering the aggravating and mitigating factors, including those defendant claims the trial court failed to consider, the court imposed two concurrent 12-year sentences in DOC, which are at the lower end of the statutory sentencing range for the offenses. Given the evidence presented at trial and at the sentencing hearing, defendant's sentence is not greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offenses. Accordingly, we find the court did not abuse its discretion. Because we find no error in defendant's sentencing, defendant cannot establish plain error and his claims on appeal are forfeited.

¶ 27                    III. CONCLUSION

¶ 28     For the reasons stated, we affirm the trial court's judgment.

¶ 29     Affirmed.