******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAWRENCE FRANKO *v.* COMMISSIONER
OF CORRECTION
(AC 37490)

Alvord, Sheldon and Keller, Js.

*Argued February 4—officially released May 17, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Wade Luckett*, assigned counsel, with whom, on the
brief, was *Walter C. Bansley IV*, assigned counsel, for
the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Richard J. Colangelo*,
*Jr.*, state's attorney, and *Kelly A. Masi*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. Upon a grant of certification to appeal, the petitioner, Lawrence Franko, appeals from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court's judgment should be reversed because that court erred by concluding that the petitioner's trial counsel, Attorneys Henry Becker and Thomas Moore,[1] did not render ineffective assistance on the basis of their decision not to seek a jury instruction on the lesser included criminal offenses of unlawful restraint in either the first or second degree. We affirm the judgment of the habeas court.

The following procedural history and facts are relevant to this appeal. In 2010, following a jury trial, the petitioner was convicted of kidnapping in the second degree in violation of General Statutes § 53a-94.[2] The petitioner was thereafter sentenced to serve sixteen years in prison, followed by four years of special parole.[3]

This court, in affirming the petitioner's conviction on direct appeal, stated that the jury reasonably could have found the following facts pertaining to the underlying crime. "On November 10, 2008, the victim was packing groceries into her vehicle, which was parked in the parking lot of a Stamford grocery store. After the victim entered her vehicle, shut the door and started the vehicle, the [petitioner], who had a prior relationship with the victim, opened the vehicle's door and pushed the victim between the passenger's and driver's seats. The victim's keys to the vehicle were knocked out of the ignition during the victim's initial struggle with the [petitioner], but the [petitioner] then started the vehicle with another key. The victim pushed the horn of her car in an attempt to draw attention to the situation. The [petitioner] grabbed the victim's hair and hit her face against the dashboard, which caused the victim to bleed.

"He then held the victim's head down as he drove her vehicle on the Merritt Parkway, in the direction of the [petitioner's] residence. The victim, in an attempt to escape the vehicle, persuaded the [petitioner] to pull into a rest stop for gas. The [petitioner] pulled into the New Canaan rest area, which included a gas station, and parked the vehicle, but, after the [petitioner] decided the rest area was 'not the right place to talk,' he began to drive the vehicle in reverse in order to exit the rest area. Trying to prevent the victim from exiting the vehicle, the [petitioner] grabbed the victim's belt and pants, until her pants ripped at the crotch area. The victim successfully escaped the vehicle and ran to the gas station. The victim called 911 on her cell phone and also requested that the gas station attendant call 911 . . . . The [petitioner] ran into the woods, behind the rest area, before state police arrived in response to

the 911 calls.

"Officer Glen Coppola of the Stamford police department . . . was dispatched to the rest area to meet with the victim. The victim subsequently followed Coppola to the special victims unit of the department. When the victim arrived at the department, she met with Sergeant Christian DiCarlo, who noted facial bruising, scratches around the victim's eyes and the fact that her jeans were torn. DiCarlo took the victim's statement and photographed the extent of her injuries. Later that night, the [petitioner] surrendered to the department and was arrested on the charge of kidnapping in the second degree, of which he ultimately was convicted." *State* v. *Franko*, 142 Conn. App. 451, 453–55, 64 A.3d 807, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013).

The petitioner filed an initial petition for a writ of habeas corpus on April 13, 2011. He thereafter filed an amended petition on April 16, 2014, a second amended petition on May 27, 2014, and a third amended petition on July 30, 2014. In the third amended petition, amongst several other claims, the petitioner claimed that he received ineffective assistance of counsel during his criminal trial because his trial counsel did not request a jury instruction on the lesser included offenses of unlawful restraint in the first degree, unlawful restraint in the second degree, or assault in the third degree.

The respondent, the Commissioner of Correction, denied the substance of all of the petitioner's claims in a return filed on August 4, 2014. On November 20, 2014, the court, *Sferrazza, J.*, held a habeas trial, during which the petitioner presented documentary and testimonial evidence. Relevant to the issue on appeal, the petitioner presented his own testimony, as well as the testimony of Attorney Robert McKay, a Connecticut criminal defense attorney, and Attorney Maureen Ornousky, the prosecutor who handled the petitioner's criminal trial. On December 4, 2014, the court issued a memorandum of decision wherein it denied the petitioner's amended petition. In the court's memorandum of decision, it determined, inter alia, that the petitioner had failed to show ineffective assistance based upon his trial counsel's choice not to seek a lesser included offense instruction on unlawful restraint in either the first or second degree.[4] The habeas court also found that the petitioner had failed to prove prejudice in accordance with *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as a result of his trial counsel's failure to request a lesser included offense instruction. Most notably, the court found that the record demonstrated "ample evidence justifying proof of all the elements of kidnapping [in the] second degree" and that the jury was presumed to have acted in accordance with the trial court's proper instructions as to the crime charged.

The petitioner sought certification to appeal to this

court on December 10, 2014, which the habeas court granted on December 11, 2014.[5] This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the appropriate standard of review. "The standard to be applied . . . in determining whether an attorney effectively represented a criminal defendant is set forth in *Strickland* v. *Washington*, [supra, 466 U.S. 668] . . . . In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. . . . Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Carey* v. *Commissioner of Correction*, 86 Conn. App. 180, 182, 860 A.2d 776 (2004), cert. denied, 272 Conn. 915, 866 A.2d 1283 (2005).

"In an appeal from the denial of a habeas writ, the burden imposed upon the petitioner is higher than that imposed on him in a direct appeal. In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial. . . . A reviewing court can find against the petitioner on whichever ground is easier." (Citations omitted; internal quotation marks omitted.) *Walton* v. *Commissioner of Correction*, 57 Conn. App. 511, 517–18, 749 A.2d 666, cert. denied, 254 Conn. 913, 759 A.2d 509 (2000).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689–90; accord *Bova* v. *Warden*, Superior Court, judicial district of New Haven, Docket No. CV-99-0423653-S, 2004 WL 2222568, *2 (September 1, 2004), aff'd, 95 Conn. App. 129, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006). "This court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [T]he habeas judge is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Minor* v. *Commissioner of Correction*, 150 Conn. App. 756, 762, 92 A.3d 1008, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014). "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 638, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

Connecticut appellate courts repeatedly have acknowledged that a criminal defendant does not have a fundamental constitutional right to a jury instruction on every lesser included offense. *State* v. *Colon*, 272 Conn. 106, 220, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980); *State* v. *Langley*, 128 Conn. App. 213, 231, 16 A.3d 799, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011); *State* v. *Marsha P.*, 126 Conn. App. 497, 504, 11 A.3d 1164 (2011). A criminal defendant may be entitled to a lesser included offense instruction, however, pursuant to the "common law doctrine that requires a defendant to demonstrate his compliance with . . . four conditions stated in [*State* v. *Whistnant*, supra, 588]: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof [on] the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 65, 621 A.2d 728 (1993). In the context of a direct appeal, "an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that

the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Colon*, supra, 220–21.

I

We first address the petitioner's claim that his trial counsel's failure to request a lesser included offense instruction on unlawful restraint in either the first or second degree amounted to deficient performance. The petitioner claims that his trial counsel rendered deficient performance because the evidence admitted at trial "clearly warranted a lesser included [offense] instruction on unlawful restraint in either the first or second degrees";[6] (footnote omitted); their failure to request such an instruction was not part of a reasonable trial strategy; and their actions did not demonstrate the "only justification that would have excused [this] failure . . . [a] so-called 'all or nothing' approach," whereby they avoided requesting a lesser included offense instruction in the hope that the jury would return a verdict of not guilty on the greater offense and, therefore, would acquit the petitioner.

In opposition, the respondent argues that the petitioner's trial counsel did not render deficient performance because their actions *did* demonstrate an "all or nothing" strategy, which was reasonable in the petitioner's case because the state had charged him only with second degree kidnapping, and not second degree kidnapping along with unlawful restraint in the first or second degree. We agree with the respondent.

The following additional facts and analysis set forth by the habeas court are relevant to the petitioner's claim: "Neither Attorney Becker nor Attorney Moore testified at the habeas trial. The petitioner offered the testimony of Attorney Robert McKay to support [his ineffective assistance argument with respect to his trial counsel's failure to request a lesser included offense instruction]. Attorney McKay opined that the decision whether to seek the possibility of conviction on lesser [included] offenses rests with the client and that *he*, personally, would have sought instructions on such offenses on behalf of the petitioner.

"Attorney McKay reasoned that the incident at the core of the events which gave rise to the charges against the petitioner was essentially an escalation of a domestic dispute between the petitioner and the victim. Attorney McKay felt that the availability of conviction for lesser [included] crimes would have provided the jury with an outlet if its members concurred with that assessment. Instead, the jurors were left with the all-or-nothing alternatives of conviction for kidnapping [in the] second degree or acquittal.

"Attorney McKay *never* testified, however, that [trial] counsel, who chose the all-or-nothing course, such as Attorneys Becker and Moore did, engaged in conduct

which fell below acceptable, professional standards. As a result, no expert witness supported a conclusion that the petitioner's [trial] counsel were ineffective, within the meaning of the performance prong of the *Strickland* standard, for leaving the jury with the convict-or-acquit option only.

"As a preliminary matter, contrary to Attorney McKay's opinion, it appears that the decision to seek or forgo jury instructions as to lesser [included] offenses other than those charged vests in [trial] counsel rather than the client. [*Reeves* v. *Commissioner of Correction*, 119 Conn. App. 852, 862, 989 A.2d 654, cert. denied, 296 Conn. 906, 992 A.2d 1135 (2010)]. '[T]his decision is in the realm of strategy decisions to be made by the attorney.' Id. Attorney McKay never consulted the petitioner nor interviewed his former [trial] counsel about [counsel's] decision not to pursue the option of allowing the jury to convict on [lesser] included offenses.

"Declining to seek such instructions is not ineffective assistance per se which satisfies the performance part of the *Strickland* test, [*Fair* v. *Warden*, 211 Conn. 398, 403, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989)]. Indeed, the decision to forgo such lesser included offense conviction possibilities, even where a criminal defendant is legally *entitled* to such instructions, does not render that representation substandard. [*Beasley* v. *Commissioner of Correction*, 47 Conn. App. 253, 262, 704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]. There is no universal stratagem governing whether defense counsel should seek such instructions. Id., 264. 'What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation.' Id.

"By limiting the jury's focus to one charge, the prosecution risks complete acquittal even though the defendant may have committed a provable crime of a lesser nature. In the present case, Attorney Becker's summation strummed just this chord. He repeatedly pointed out that, although the evidence might establish that the petitioner engaged in some wrongdoing, that activity never demonstrated proof of all the elements of kidnapping [in the] second degree beyond a reasonable doubt. He stressed that the petitioner could only be assessed with respect to the crime with which he was charged, no matter if the jury concluded that he was guilty of some other offense. This court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence that this tactical approach was deficient under the performance prong of *Strickland*." (Emphasis in original.)

In addition to noting the habeas court's findings of fact, we agree with its assessment of Attorney Becker's closing argument. Specifically, we note that Attorney

Becker repeatedly informed the jury that the petitioner had been charged only with kidnapping in the second degree, he repeatedly summarized the evidence adduced at trial as it related to the altercation between the petitioner and the victim, and he concluded these summaries by stating that such evidence did not prove kidnapping in the second degree. Furthermore, Attorney Becker stressed the state's decision not to charge the petitioner with other lesser offenses, as he asserted that "the state's attorney decided not to charge [the petitioner] with [u]nlawful [r]estraint or . . . [a]ssault . . . [which was] their choice."[7] Finally, Attorney Becker distinguished the serious nature of the kidnapping charge from the nature of any other possible charge that the state could have brought against the petitioner, as he asserted in his closing argument that kidnapping in the second degree is "extremely serious," that it is a "very, very serious charge," and that there is a "big difference" between kidnapping and unlawful restraint or assault.

With respect to his burden of proof in showing deficient performance, the petitioner must "show that counsel's representation fell below an objective standard of reasonableness." (Internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 102 Conn. App. 838, 841, 927 A.2d 347, cert. denied, 284 Conn. 925, 933 A.2d 724 (2007). In our assessment of whether the petitioner has met his burden, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) Id., 842.

As a preliminary matter, we note that at the habeas trial, the petitioner did not present testimony from his trial counsel.[8] Consequently, the court, in ruling on the petition, did not have the benefit of counsel's explanation, if any, for counsel's failure to request the instruction at issue. On the basis of its review of the criminal trial transcripts and the testimony from the habeas trial, the habeas court determined that trial counsel's decision not to request a lesser included offense instruction might have been part of an overall trial strategy, rather than the result of negligence or inadvertence. A habeas petitioner's failure to present trial counsel's testimony as to the strategy employed at a petitioner's criminal trial hampers both the court at the habeas trial and the reviewing court in their assessments of a trial strategy. "[T]rial counsel's testimony is not necessary to our determination that a particular decision might be considered sound trial strategy." *Bullock* v. *Whitley*, 53 F.3d 697, 701 (5th Cir. 1995). Lacking the ability to determine

directly the reasons for trial counsel's actions, courts must examine all other available evidence from the trial record in order to determine whether the conduct complained of might be considered sound trial strategy. See, e.g., *Fink* v. *Lockhart*, 823 F.2d 204, 206 (8th Cir. 1987); *Quinones* v. *Miller*, Docket No. 01 Civ. 10752 (WHP), 2003 WL 21276429 (S.D.N.Y. June 3, 2003); *Henry* v. *Scully*, 918 F. Supp. 693, 715 (S.D.N.Y. 1995), aff'd, 78 F.3d 51 (2d Cir. 1996); *Jones* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-07-4001543, 2012 WL 3853806 (July 31, 2012), appeal dismissed, 152 Conn. App. 110, 96 A.3d 1271, cert. denied, 314 Conn. 931, 102 A.3d 83 (2014); *Jenkins* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-05-4000720, 2010 WL 1664958 (March 31, 2010), appeal dismissed, 134 Conn. App. 901, 37 A.3d 204, cert. denied, 304 Conn. 923, 41 A.3d 662 (2012); *Bova* v. *Warden*, supra, 2004 WL 2222568.

Although a reviewing court should adhere to the strong presumption that trial counsel's strategic decisions are reasonable until the habeas petitioner has shown otherwise; see *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 705, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995); *Gipson* v. *Commissioner of Correction*, 54 Conn. App. 400, 437, 735 A.2d 847 (1999) (*Lavery, J.*, concurring), rev'd on other grounds, 257 Conn. 632, 778 A.2d 121 (2001); it should not speculate as to trial counsel's reasons for making such decisions. See, e.g., *Bewry* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-931665, 2001 WL 1249844 (October 2, 2001), appeal dismissed, 73 Conn. App. 547, 808 A.2d 746 (2002), cert. denied, 266 Conn. 918, 837 A.2d 801 (2003). Instead, the reviewing court may look to the record of the criminal trial as circumstantial evidence of trial counsel's strategy. In the present case, we particularly focus on Attorney Becker's closing argument.

On the basis of our review of the record and the relevant case law, we conclude that the petitioner has failed to overcome the strong presumption that his trial counsel's decision not to ask for an instruction on a lesser included offense amounted to a reasonable strategy in representing him at his criminal trial. The decision of the petitioner's trial counsel not to seek a lesser included offense instruction during the petitioner's criminal trial was particularly reasonable in light of the fact that the state ultimately charged the petitioner only with having committed kidnapping.

In *State* v. *Salamon*, 287 Conn. 509, 546, 949 A.2d 1092 (2008), our Supreme Court held that the legislature, "in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints *by the presence of an intent to prevent a victim's liberation*, intended to exclude from the scope of the more serious crime of

kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. . . . We emphasized, however, that our holding [did] not represent a complete refutation of the principles established by our prior kidnapping jurisprudence. First, in order to establish a kidnapping, the state is not required to establish any minimum period of confinement or degree of movement. When that confinement or movement is merely incidental to the commission of another crime, however, the confinement or movement must have exceeded that which was necessary to commit the other crime." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 455–56, 10 A.3d 942 (2011). Furthermore, our Supreme Court "emphasized in *Salamon*, in which the defendant ultimately was not tried for assault, that *a defendant is entitled to an instruction that he cannot be convicted of kidnapping if the restraint imposed on the victim was merely incidental to the assault, regardless of whether the state elects to try the defendant for assault*, because the facts reasonably would support an assault conviction. . . . We noted in footnote 35 of that opinion that [*t*]*o conclude otherwise would give the state carte blanche to deprive the defendant of the benefit of such an instruction merely by declining to charge him with the underlying crime, which . . . generally will carry a far less serious maximum possible penalty than the kidnapping charge*." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 457.

During his closing argument, Attorney Becker acknowledged that the evidence adduced at the petitioner's criminal trial supported other uncharged offenses, including unlawful restraint and assault. Furthermore, the court instructed the jury that "[t]he state ha[d] offered evidence that the [petitioner] committed another offense at the time of the alleged kidnapping . . . . [s]imple [a]ssault." In order to prove beyond a reasonable doubt that the petitioner was guilty of having committed kidnapping in the second degree, the state, pursuant to *Salamon*, at least had to prove that the petitioner had the *specific intent* to restrain the victim to a greater degree than was necessary in order to commit some other crime against her. See *State* v. *Salamon*, supra, 287 Conn. 550 n.35. If the state failed to meet this burden, then the jury would have to find the petitioner not guilty of committing kidnapping. Id., 550. Our review of the record indicates that the jury was instructed on the state's burden pursuant to *Salamon*.[9]

Our review of Attorney Becker's closing argument and the testimony submitted at the criminal trial leads us to infer that the petitioner's trial counsel, by not seeking a lesser included offense instruction on unlawful restraint, tried to capitalize on the state's decision

to charge the petitioner only with kidnapping in the second degree, which we determine to be a reasonable trial strategy. This court previously has recognized the reasonableness of such a strategy. See *Reeves* v. *Commissioner of Correction*, supra, 119 Conn. App. 862 ("[i]t may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict" [internal quotation marks omitted]). From a more general standpoint, it appears that petitioner's trial counsel, and particularly Attorney Becker, by repeatedly referring to the absence of potentially justifiable, less serious charges against the petitioner, argued that the state had overcharged the petitioner and that the entire incident was a domestic dispute that had been exaggerated as a kidnapping by both the victim and by the state.

The evidence admitted at the petitioner's criminal trial established, inter alia, that the petitioner grabbed the victim by her hair in her car and hit her face against the dashboard; that he held the victim's head down as he drove her car; and that, after having pulled over the victim's car at a rest area, he grabbed the victim and attempted to restrain her from exiting the car as he subsequently tried to drive away with her before she ultimately escaped his grasp and left the car. In order to prove that the petitioner was guilty of kidnapping in the second degree, the state had the burden of proving, beyond a reasonable doubt, that he "abducted" the victim, meaning that he "restrain[ed] [her] with [the] intent to prevent [her] liberation by either . . . secreting or holding [her] in a place where [she was] not likely to be found, or . . . using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2); see also *State* v. *Franko*, supra, 142 Conn. App. 460–61.[10] More importantly, as we previously noted, the state had the additional burden, pursuant to *Salamon*, of proving beyond a reasonable doubt that the petitioner had the intent to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to commit an assault against her, and that his restraint of her was not merely incidental to the assault. See *State* v. *Salamon*, supra, 287 Conn. 542–43.

In the present case, it is possible that a lesser included offense instruction on unlawful restraint actually may have stressed the difference between this offense and kidnapping, and it may have elucidated that the petitioner's actions against the victim indeed constituted a kidnapping. Nevertheless, on the basis of the evidence adduced at trial, we believe that reasonable minds could differ on whether the state had met its burden of proving that the petitioner had demonstrated the requisite intent to support a kidnapping conviction. The petitioner's trial counsel presumably recognized this and sought to obtain a complete acquittal for the petitioner by not seeking a lesser included offense instruction on unlawful restraint.

In support of the petitioner's argument that his trial counsel rendered deficient performance by not requesting a lesser included offense instruction on unlawful restraint, he attempts to distinguish his case from two Connecticut habeas cases in which trial representation similar to that at issue in the present case was deemed to be effective assistance, *Fair* v. *Warden*, 211 Conn. 398, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989), and *Reeves* v. *Commissioner of Correction*, supra, 119 Conn. App. 852.[11] The petitioner also tries to draw similarities between his case and two cases decided by the appellate courts of our sister states, *Washington* v. *State*, 113 So. 3d 1028 (Fla. App. 2013), and *People* v. *Gallagher*, 980 N.E.2d 140 (Ill. App. 2012), in which trial counsel's failures to seek certain jury instructions were deemed to be ineffective assistance. Aside from the fact that these cases are not binding on our analysis, we find the petitioner's reliance on them to be misplaced.[12]

Despite the fact that the petitioner's trial counsel may not have been trying to seek the jury's sympathy for the petitioner; see *Fair* v. *Warden*, supra, 211 Conn. 405–407; and despite the fact that the evidence of the greater offense charged against the petitioner may have been stronger than it was in *Reeves* v. *Commissioner of Correction*, supra, 119 Conn. App. 862, the petitioner's trial counsel evidently pursued a complete acquittal for the petitioner, which was a reasonable strategy under the circumstances. The petitioner's trial counsel may have believed that the state increased the likelihood that the petitioner would not face criminal liability relevant to the events at issue by charging him only with one offense, kidnapping in the second degree, as opposed to multiple offenses. Furthermore, the petitioner's trial counsel may have believed that the state also had taken the risk—by charging the petitioner only with a kidnapping offense—that it would succeed in proving that the petitioner's restraint of the victim was not merely incidental to his commission of some other crime against her, such as assault. See *State* v. *Salamon*, supra, 287 Conn. 542, 546–47, 550.

Although the petitioner's expert witness at his habeas trial, Attorney McKay, a criminal defense attorney, opined otherwise, we agree with the trial court's determination that the choice not to seek a lesser included offense instruction on unlawful restraint at the petitioner's criminal trial was not a tactical approach that was so unreasonable that it amounted to deficient performance under *Strickland* v. *Washington*, supra, 466 U.S. 668. Attorney McKay testified that the petitioner's trial counsel should have requested a jury instruction on unlawful restraint in the second degree at his criminal trial primarily because Attorney Becker repeatedly had referred to unlawful restraint in his closing argument, and the maximum penalties for kidnapping are vastly

greater than those for unlawful restraint. Furthermore, McKay testified that because the offenses were quite similar, providing an unlawful restraint instruction may have created confusion in the minds of the jury and, thus, may have led the jury to find the petitioner guilty only of committing the lesser included offense.

We conclude, however, that in the face of these considerations, the petitioner's trial counsel acted within the boundaries of professional reasonableness by focusing the jury's attention on the seriousness of the kidnapping charge and by not requesting the lesser included offense instruction. Furthermore, as Attorney Ornousky, the prosecutor from the petitioner's criminal trial, indicated in her testimony at the habeas trial, this strategy fit the narrative that the petitioner's trial counsel tried to convey to the jury: "that this was an overreaching on [the] part of the state, that [it] had overcharged . . . that this was something, but not a kidnapping, and that . . . the victim had exaggerated what had happened and the state was overzealous . . . ." Accordingly, we conclude that the petitioner has failed to prove deficient performance because he has failed to prove that his trial counsel, by failing to pursue an instruction on lesser included offenses, performed in a way that "fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law . . . ." (Internal quotation marks omitted.) *Walton* v. *Commissioner of Correction*, supra, 57 Conn. App. 518.

## II

Even if we did conclude that the petitioner's trial counsel rendered deficient performance by failing to request an instruction on a lesser included offense, we nevertheless conclude that such action did not prejudice the petitioner's defense. The petitioner claims that his trial counsel's failure to request an instruction on the lesser included offense of either unlawful restraint in the first or second degree prejudiced his defense because if the jury had received such an instruction, it would have found him guilty of only an unlawful restraint offense, and not kidnapping.[13] In opposition, the respondent argues that trial counsel's choice not to request an instruction on an unlawful restraint offense did not prejudice the petitioner's defense. We agree with the respondent.

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Minor* v. *Commissioner of Correction*, supra, 150 Conn. App. 761–62.

We conclude that the petitioner has failed to meet his burden of proving that but for his trial counsel's failure to request a lesser included offense instruction on unlawful restraint in the first or second degree, there is a reasonable probability that the jury would have had a reasonable doubt as to his guilt with respect to kidnapping in the second degree. In order to prove that the petitioner was guilty of kidnapping in the second degree, the state had to prove beyond a reasonable doubt that he abducted the victim by restraining her with the intent to prevent her liberation by either secreting or holding her in a place where she was not likely to be found, or by using or threatening to use physical force or intimidation. See General Statutes §§ 53a-91 (2) and 53a-94. If the petitioner had been tried for unlawful restraint in the first degree, the state would have had the burden of proving beyond a reasonable doubt that the petitioner restrained the victim under circumstances which exposed her to a substantial risk of physical injury. General Statutes § 53a-95.[14] If the petitioner had been tried for unlawful restraint in the second degree, the state would have had the burden of proving beyond a reasonable doubt that the petitioner restrained the victim. General Statutes § 53a-96.

In light of our Supreme Court's holding in *State* v. *Salamon*, supra, 287 Conn. 542–43, the state also had the burden of proving, with respect to the intent element required for a kidnapping conviction, that the petitioner's restraint of the victim was sufficiently disconnected from, and not merely incidental to, his assault of her. See *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 747, 129 A.3d 796 (2016). In cases following *Salamon*, Connecticut appellate courts have upheld kidnapping convictions particularly in cases where the state presented strong evidence showing that a defendant had restrained a victim for a substantial period of time, that a defendant had moved a victim a significant distance against his or her will, and that a defendant had harmed a victim in ways that went beyond the purpose of another offense against the victim, such as an assault. See id., 746; see also *State* v. *Hampton*, 293 Conn. 435, 463–64, 988 A.2d 167 (2009); *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 846–47, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015); *State* v. *Nelson*, 118 Conn. App. 831, 860–62, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

In the present case, the state presented strong evidence that the petitioner's restraint of the victim was not merely incidental to his commission of an assault against her. The evidence adduced at the petitioner's criminal trial established that shortly after the petitioner had entered the victim's car, he assaulted her when he grabbed her by her hair and hit her face against the dashboard. Furthermore, the evidence established that this assault occurred immediately after the petitioner had started the victim's car, and after she had sounded her car horn in an effort to draw attention to the petitioner's actions and presumably to summon assistance. The evidence established that the petitioner then proceeded to hold the victim's head down as he drove her in her car, on a highway, from the Stamford grocery store to the New Canaan rest area. Finally, the evidence established that after having pulled over the victim's car at the rest area, the petitioner grabbed the victim and attempted to prevent her from exiting the car as he once again tried to drive away with her before she ultimately escaped his grasp and left the car.

Thus, the evidence presented by the state strongly supported a kidnapping conviction in light of the fact that it established that the petitioner had abducted the victim by preventing her liberation through the use of physical force. General Statutes §§ 53a-91 (2) and 53a-94 (a). The timing of the petitioner's actions, as shown by the evidence, strongly indicates that the petitioner used physical force on the victim *in order to prevent her liberation*, considering that the evidence demonstrated that he hit her head against the dashboard immediately after she tried to summon help and after he had started her car, that he held her head down as he drove her in her car on a busy highway, and that he forcibly grabbed her as she began to escape from the car at the New Canaan rest area. With respect to the requisite intent pursuant to *State* v. *Salamon*, supra, 287 Conn. 542–43, the evidence established that the petitioner's acts of restraint against the victim were not merely incidental to his assault of her. See id., 550 n.35. After he assaulted the victim, the petitioner then further restrained her as he drove her in her car from the Stamford grocery store to the New Canaan rest area. One can reasonably infer that the petitioner's restraint of the victim, which, at the latest, began as soon as he hit her head against the dashboard after she sounded the horn, and which continued until he grabbed her by her belt and pants until her pants ripped at the crotch area as she began her escape from the car at the New Canaan rest area, was carried out with the intent to avoid detection and to prevent the victim from summoning assistance. Furthermore, one reasonably can infer that the petitioner intended to prevent the victim's liberation in order to perpetrate more than a single offense against her, especially in light of the evidence establishing that he drove her away in her car after he had hit her head against

the dashboard and after she had attempted to draw attention to the situation.

In light of the strength of the state's case, we are not persuaded that if the jury had been charged with respect to the lesser included offense at issue, it is reasonably probable that the jury would have decided the issues differently. Therefore, we conclude that the petitioner has failed to meet his burden of proving that his trial counsel's failure to request a lesser included offense instruction on unlawful restraint in either the first or second degree prejudiced his defense. Additionally, as we decided in part I of this opinion, the petitioner has failed to prove that his trial counsel's failure amounted to deficient performance. Because the petitioner is unable to satisfy either of these burdens, he has failed to prove ineffective assistance of counsel and his habeas petition was properly denied.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner's appeal focuses significantly on the representation afforded to him by Attorney Becker, but for purposes of this opinion, "trial counsel" shall refer to both Attorneys Becker and Moore. Where appropriate, we shall refer to each attorney by his respective name.

[2] General Statutes § 53a-94 provides in relevant part: "(a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

[3] We note that the petitioner was charged in a part B information with being a persistent dangerous felony offender, pursuant to General Statutes § 53a-40 (a) (2) (A). The jury found the petitioner guilty of being a persistent dangerous felony offender on July 9, 2010, but the court granted the petitioner's oral motion for acquittal on this charge.

[4] We focus our opinion on only the petitioner's claim alleging ineffective assistance due to his trial counsel's failure to request a lesser included offense instruction on unlawful restraint in the first or second degree, and we deem the other claims in his third amended habeas petition to be abandoned because, on appeal, he has not briefed any such claims. See *Giannotti* v. *Warden*, 26 Conn. App. 125, 130 n.5, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992).

[5] Among the issues set forth in the petition for certification to appeal was the following: "Whether the court erred in finding that counsel was not ineffective for failing to seek the lesser included offense?"

[6] General Statutes § 53a-95 sets forth the elements of unlawful restraint in the first degree and it provides: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

General Statutes § 53a-96 sets forth the elements of unlawful restraint in the second degree and it provides: "(a) A person is guilty of unlawful restraint in the second degree when he restrains another person.

"(b) Unlawful restraint in the second degree is a class A misdemeanor."

[7] The petitioner's trial counsel confined the jury's consideration to the offense that the petitioner was charged with committing, kidnapping in the second degree, as exhibited by the following excerpts from Attorney Becker's closing argument: "Even if they had a fight in the car, then charge [the petitioner] with . . . [a]ssault or [u]nlawful [r]estraint, not [k]idnapping in the [s]econd [d]egree. . . . But, [the petitioner] is not being charged with . . . [u]nlawful [r]estraint. And he's not being charged with [a]ssault. Maybe, if he had been, maybe he'd be convicted on those. Not [k]idnapping in the [s]econd [d]egree.

\*\*\*

"So, what went on in that car? I don't know. Certainly they had an altercation. . . . But it's not [k]idnapping in the [s]econd [d]egree. That it's not. It could be [a]ssault, [s]imple [a]ssault. And it could be [u]nlawful [r]estraint. I don't know. But, it's not [k]idnapping in the [s]econd [d]egree. It's a big difference.

\*\*\*

"Sure, but again, he's got to drive and what happened in that car, I don't know. . . . But it's not [k]idnapping in the [s]econd [d]egree. That it's not. It could be [a]ssault, [s]imple [a]ssault. And it could be [u]nlawful [r]estraint. I don't know. But, it's not [k]idnapping in the [s]econd [d]egree.

\*\*\*

"Do the jeans look bad? Yeah, they do. Does her face have some damage on it? Yeah, it does. That doesn't mean he kidnapped her in the [s]econd [d]egree. [He] may have assaulted her in that car. I don't know. Charge him with [a]ssault [t]hree or [s]imple [a]ssault. I don't know what happened in that car. . . . But, [the state] didn't charge him with those offenses. They decided to charge him with [k]idnapping in the [s]econd [d]egree.

\*\*\*

"So, if you weigh all that. And weigh her statements. And weigh a lot of things here. Other than emotions. And other than what he may or may not have done, which was never charged. I don't see how you can come to any other conclusion, considering the seriousness of this charge, other than not guilty. Because the [s]tate has not proven beyond any reasonable doubt that [the petitioner] is guilty of [k]idnapping in the [s]econd [d]egree. As I said, maybe he's guilty of [a]ssault. He may even be guilty of [u]nlawful [r]estraint. It's not the charge here, remember that."

[8] Neither Attorney Becker nor Attorney Moore testified at the petitioner's habeas trial on November 20, 2014. The habeas trial transcript reflects that the petitioner's habeas counsel attempted to have Attorney Becker subpoenaed to testify at the habeas trial, but due to the fact that he was from New York, a subpoena was unable to be issued to him. The transcript also reveals that Attorney Becker did appear at an earlier scheduled date for the habeas proceeding, but the case did not go forward on that date and he was unable to testify at that time.

[9] Specifically, the court instructed the jury as follows: "The [petitioner] is charged with [k]idnapping in the [s]econd [d]egree. The [s]tatute defining this offense reads in pertinent part as follows. A person is guilty of [k]idnapping in the [s]econd [d]egree when he abducts another person.

"For you to find the [petitioner] guilty of this charge, the [s]tate must prove beyond a reasonable doubt, that the [petitioner] abducted [the victim]. Abduct means to restrain a person with the intent to prevent her liberation by using or threatening to use physical force or intimidation.

"The [petitioner] does not need to actually use force. He need only threaten to use force in such a manner that [the victim] reasonably believed that force would be used if she tried to escape. Restrain means to restrict a person's movements, intentionally and unlawfully, in such a manner as to interfere substantially with her liberty by moving her from one place to another; or by confining her either in the place where the restriction commences or in a place to which she has been moved without consent.

"There is no requirement that the movement be of any specific distance or that the confinement lasts any specific period of time. There need not be any movement at all. The person could be confined by preventing her from leaving a place where she was. Any apparent consent on the part of [the victim] to the movement or confinement, must have been actual and not simply acquiescence brought on by force, fear, shock, or deception.

\*\*\*

"The state has offered evidence that the [petitioner] committed another offense at the time of the alleged kidnapping.

"I am referring to the [victim's] testimony that at the time of the alleged crime, the [petitioner] grasped her by her hair down, [a]nd while doing so, struck her head against the dashboard of her vehicle.

"That testimony is evidence of the crime of [s]imple [a]ssault. The [petitioner], however, is not charged with that crime and you will not be rendering a verdict on that charge. A person is guilty of [s]imple [a]ssault when, with intent to cause physical injury to another person, he causes such injury to that person.

\*\*\*

"To establish the intent required for the abduction element of the crime of [k]idnapping, the [s]tate must prove that the [petitioner] intended to prevent the [victim's] liberation for a longer time, or to a greater degree than that which is necessary to commit another crime; here, the crime of [s]imple [a]ssault.

"In this regard, the [petitioner's] intent to prevent the [victim's] liberation may be manifest by confinement or movement that is more than merely incidental to the other offense. In other words, if the confinement or movement is so much a part of the other offense that it could not have been committed without such acts, then the requisite intent to prevent the [victim's] liberation has not been established.

"There is, however, no minimal period of confinement or degree of move-

ment necessary to establish [k]idnapping. Whether the movement or confinement of the [victim] is merely incidental to another offense is a question of fact for you to determine.

"In determining whether the [petitioner] intended to prevent the [victim's] liberation beyond the degree necessary to commit the other offense, you may consider all of the relevant facts and circumstances of the case, including but not limited to the following factors.

"The nature and duration of the [victim's] movement or confinement by the [petitioner]. Whether that movement [or] confinement occurred during the commission of the separate offense. Whether the restraint was inherent in the nature of the separate offense.

"Whether the restraint prevented the [victim] from summoning assistance. Whether the restraint reduced the [petitioner's] risk of detection. And whether the restraint created a significant danger or increased the [victim's] risk of harm independent of that posed by the separate offense.

***

"In summary, the state must prove beyond a reasonable doubt that the [petitioner] abducted [the victim]. If you unanimously find that the state has proved beyond a reasonable doubt, each of the elements of the crime of [k]idnapping in the [s]econd [d]egree, then you shall find the [petitioner] guilty."

[10] If the petitioner had been tried for unlawful restraint, the state would have had the burden of proving beyond a reasonable doubt that he "restrained" the victim, or restricted her "movements intentionally and unlawfully in such a manner as to interfere substantially with [her] liberty by moving [her] from one place to another, or by confining [her] either in the place where the restriction commence[d] or in a place to which [she had] been moved, without consent. . . ." General Statutes § 53a-91 (1).

[11] The petitioner attempts to distinguish his case from *Reeves* and *Fair* by arguing that his trial counsel's decision not to seek a lesser included offense instruction in his criminal trial was an unreasonable one. He notes that in both *Reeves* and *Fair*, this court and our Supreme Court, respectively, concluded that trial counsel's failure to request lesser included offense instructions did not amount to deficient performance because such actions were part of a reasonable trial strategy. See *Fair* v. *Warden*, supra, 211 Conn. 405–407 (no ineffective assistance where there was overwhelming evidence against petitioner of his commission of greater offense and counsel's trial strategy was to appeal to jury's sympathy for petitioner's disheartening situation during time of his commission of crime); see also *Reeves* v. *Commissioner of Correction*, supra, 119 Conn. App. 861–63 (no ineffective assistance where greater offense charged was robbery, petitioner claimed he was innocent because victim gave him allegedly stolen items as repayment for debt, state's evidence of petitioner's use of force and larceny was weak, and trial counsel discussed strategy with petitioner). The petitioner claims that his trial counsel's failure to request a lesser included offense instruction, on the other hand, was not part of a reasonable strategy. Specifically, he attempts to distinguish his case from *Reeves* by indicating that his trial counsel did not discuss an "all-or-nothing" strategy with him, unlike trial counsel in *Reeves*. The petitioner attempts to distinguish his case from *Fair* by noting that his trial counsel did not try to seek the jury's sympathy because Attorney Becker during his closing argument expressly stated that he did not even like the petitioner.

Our review of the record leads us to infer that it was reasonable for the petitioner's trial counsel not to seek the jury's sympathy for the petitioner in light of the evidence adduced at trial. Evidence of the petitioner's prior uncharged misconduct with respect to the victim was adduced at trial. The victim testified that the petitioner had abused her verbally and physically on numerous occasions in the past and that she had not filed any police reports following these incidents. Attorney Becker, in his closing argument, attempted to discredit the veracity of the victim's testimony about these prior instances of the petitioner's misconduct, as he emphasized that there were no corroborating witnesses for these prior instances. Attorney Becker also attacked the victim's credibility by indicating to the jury that despite all of the alleged prior instances of the petitioner's abusive behavior toward the victim, the victim continued to maintain a relationship with him. Finally, Attorney Becker essentially maintained that the altercation that had occurred between the petitioner and the victim was a domestic dispute that the victim had embellished as a kidnapping. In light of Attorney Becker's argument, and particularly his treatment of the evidence of the petitioner's prior uncharged misconduct with respect to the victim, we infer that the petitioner's trial counsel employed a reasonable trial strategy by not seeking the jury's sympathy for the petitioner, and by attempting to diminish the importance and credibility of the victim's testimony about her relationship with the petitioner. Thus, we are not persuaded by the petitioner's attempt

to distinguish his case from *Fair* v. *Warden*, supra, 211 Conn. 398, in this manner.

We similarly are not persuaded by the petitioner's attempt to distinguish his case from *Reeves* v. *Commissioner of Correction*, supra, 119 Conn. App. 852. Although the habeas trial transcript reveals that the petitioner's trial counsel did not discuss the strategy of not requesting the lesser included offense with him, we note that this court concluded in *Reeves* that the "decision [to not request a lesser included offense instruction] is in the realm of strategy decisions to be made by the attorney." Id., 862. Furthermore, we note that it was reasonable for the petitioner's trial counsel to not request a lesser included offense instruction because, as in *Reeves*, the state's evidence of the greater offense charged against the petitioner was not so strong as to preclude the possibility of an acquittal. See id.

[12] We agree with the respondent's argument that *Washington* v. *State*, supra, 113 So. 3d 1028, and *People* v. *Gallagher*, supra, 980 N.E.2d 140, are distinguishable from the petitioner's case. We observe that *Washington* v. *State*, supra, 1028, did not concern trial counsel's failure to request a lesser included offense instruction, but instead concerned trial counsel's failure to request a jury instruction on self-defense that applied not only to robbery and murder, but also to aggravated assault and battery. Id., 1031. The case's applicability to the present case is therefore questionable. Furthermore, as the respondent indicates in his brief, the Florida appellate court in *Washington* concluded that the evidence of the underlying crime adduced at trial necessarily required that the jury be given instructions that trial counsel failed to request, whereas in the present case, the evidence of the underlying crime did not necessarily require an instruction on unlawful restraint. See id.

We also conclude that the petitioner relies on *People* v. *Gallagher*, supra, 980 N.E.2d 140, to no avail. Specifically, as the respondent indicates in his brief, the defendant's trial counsel in *Gallagher* expressly stated at the jury charge conference that his strategy was to request a lesser included offense instruction on trespass because the evidence supported only such an offense. Id., 146. The defendant's trial counsel subsequently requested a jury instruction on an inapplicable offense, which was not the lesser included offense that he initially indicated he would have requested. Id., 146–47. Thus, the Illinois Appellate Court concluded that the failure of the defendant's trial counsel to request the proper lesser included offense instruction amounted to deficient performance because it was clearly the result of an error. Id. 147. In the present case, the petitioner's trial counsel did not make any express representations as to what their strategy at trial was, and we cannot readily conclude that their failure to request an instruction on a lesser included offense in the petitioner's criminal trial was the result of an error, since we must presume that counsel's conduct might have constituted sound trial strategy. See *Johnson* v. *Commissioner of Correction*, supra, 36 Conn. App. 705.

[13] Specifically, the petitioner argues that if the request had been made, it "almost certainly would have been granted" because all of the other requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, had been met, and, given the facts of his case, the court would not have been able to exclude the possibility that the petitioner could have been convicted of only unlawful restraint in the first or second degree and not kidnapping in the second degree. In this vein, the petitioner draws similarities between the facts of his case and the facts of *State* v. *Faria*, 47 Conn. App. 159, 178–86, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998), in which this court held that a trial court's failure to give a lesser included offense instruction on unlawful restraint in the second degree was improper because the evidence supported the giving of an instruction on such an offense and the jury had received instructions on, inter alia, kidnapping in the first degree.

[14] We reiterate that "restrain" in this context means the following: "[T]o restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. . . ." General Statutes § 53a-91 (1).